Karra J. Porter, 5223
     Karra.Porter@chrisjen.com
John M. Mejía, 13965
     John.Mejia@chrisjen.com
Anna P. Christiansen, 17518
     Anna.Christiansen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111-2047
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BRITT DEWEY BALKCOM**, | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| **MICHAEL MARTINEZ**, in his individual capacity, **WALTER ANAYA**, in his individual capacity, **DAVID BYWATER**, in his individual capacity, **NARISSA BROOKE ORGILL**, in her individual capacity, and **SALT LAKE CITY CORPORATION**, a Utah Municipal Corporation, | Civil No. 2:25-cv-00279 |
| Defendants. | |

Plaintiff Britt Dewey Balkcom ("Britt"), by and through his undersigned counsel of record,

hereby complains against Defendants, demands a jury trial, and asserts the following allegations

in their totality and in the alternative:

## INTRODUCTION

On the evening of April 18, 2023, Britt arrived at the Airport TRAX Station in Salt Lake City as a ticketed passenger on the train. As Britt stepped off the train and began walking toward the parking garage to retrieve a company vehicle, he was immediately profiled by an on-duty city supervisor and accosted by two uniformed police officers.  Without reasonable suspicion or probable cause to believe that Britt was committing any criminal offense, the defendants detained and ultimately arrested Britt.

Britt later came to learn that these officials were enforcing a policy of singling out for unlawful detention and questioning individuals who arrived on the last train. Britt brings this action to vindicate his rights under the United States Constitution. He does so to not only hold these government actors accountable, but to deter each Defendant named in this action, including Defendant Salt Lake City Corporation and its employees and agents, from enforcing this policy in the future.

## PARTIES AND OTHER INTERESTED PERSONS

1.     Plaintiff Britt Dewey Balkcom is a citizen of the United States and a resident of Utah County, State of Utah.

2.     Defendant Salt Lake City Corporation is a political subdivision of the State of Utah. Plaintiff sues Salt Lake City Corporation for both damages and equitable relief.

3.     At all relevant times, Defendant Michael Martinez ("Defendant Martinez") was a police officer with the Salt Lake City Police Department. Defendant Martinez is being sued in his individual capacity.

4.    At all relevant times, Defendant Walter Anaya ("Defendant Anaya") was a police officer with the Salt Lake City Police Department. Defendant Anaya is being sued in his individual capacity.

5.    At all relevant times, Defendant David Bywater ("Defendant Bywater") was a police sergeant with the Salt Lake City Police Department. Defendant Bywater is being sued in his individual capacity.

6.    At all relevant times, Defendant Narissa Brooke Orgill ("Defendant Orgill") was a Terminal Landside Operations Supervisor with the Salt Lake City International Airport, a department of Defendant Salt Lake City Corporation. Defendant Orgill is being sued in her individual capacity.

7.    Except where otherwise noted, Defendants Salt Lake City Corporation, Martinez, Anaya, Bywater, and Orgill are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

8.    This complaint arises under the United States Constitution and 42 U.S.C. § 1983. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.    Venue is proper in this Court under 28 U.S.C. § 1391.  The claims made in this Complaint arose in Salt Lake County.

## GENERAL ALLEGATIONS

10.    On April 18, 2023, Britt loaned a company vehicle owned by his employer, RMJobs.com, to an acquaintance, Pastor Jeffrey McCullough of Belleville, Illinois.

11.    Pastor McCullough was in Salt Lake City on a ministry trip for his church, Hope Chapel, and was returning home that day.

12.    Pastor McCullough drove the vehicle to the Salt Lake City International Airport ("Airport") to catch a flight to St Louis, Missouri.

13.    Pastor McCullough parked the vehicle in section 2 West, row D, column 4 of the Airport parking garage.

14.    The parking garage is attached to the Airport Terminal building (the "Terminal") by a pedestrian walkway. The garage is open and accessible at all hours so that members of the public can park, drop off, or retrieve their vehicles.

15.    That evening, after completing his shift, Britt rode as a passenger on the last Utah Transit Authority ("UTA") TRAX train of the day to the Airport Station for the purpose of retrieving the vehicle from the parking garage.

16.    Pedestrians are required to walk toward the Terminal to access the parking garage from the platform of the Airport TRAX stop.

17.    Public buses taking people from the Terminal to and from the Airport's outdoor economy and employee parking lots stop at various points outside the Terminal.

18.    Private and commercial vehicles are allowed to pick up and drop off people on the roadway outside of the Terminal.

19.    Defendants Martinez, Anaya, and Orgill were on duty at the Airport on April 18, 2023.

20.    Defendant Salt Lake City Corporation had an established policy, practice, custom, and/or decision, officially adopted, informally accepted, or otherwise condoned by the City and its officials and employees, of detaining individuals without reasonable suspicion based upon them arriving at the Airport on the last UTA TRAX train (the "Policy").

21.     On April 18, 2023, Defendants Martinez, Anaya, and Orgill were waiting at the UTA TRAX Airport Station (Stop ID: TX198004, officially located at 700 North Terminal Drive in Salt Lake City) to carry out this Policy.

22.     Defendants Martinez and Orgill stood on the platform near where passengers disembarked from the train as Britt's train arrived.

23.     Defendant Anaya was further down on the platform, next to the ticket vending machines and closer to the Terminal and parking garage. He was close enough to Defendant Orgill to clearly see her.

24.     Britt disembarked the UTA TRAX train at 11:23 pm.

25.     Britt walked along the UTA TRAX platform area as he made his way to the sidewalk that runs adjacent to the Terminal and leads pedestrians to the parking garage.

26.     Britt walked past Defendants Orgill and Martinez in the UTA TRAX platform area, toward the area where Defendant Anaya was standing.

27.     Unknown to Britt, Defendant Orgill silently pointed at him, thereby singling him out to Defendants Martinez and Anaya.

28.     Defendants Martinez and Anaya understood this as a signature gesture by Orgill to indicate that she wanted them to detain Britt for questioning.

29.     Defendants Martinez and Anaya understood Defendant Orgill's gesture because, on information and belief, they had either followed the Policy before with Defendant Orgill or other employees, or had conferred with Defendant Orgill beforehand on how to enforce the Policy.

30.    Britt continued walking on the sidewalk that runs adjacent to the Terminal and leads pedestrians to the parking garage.



Defendant Orgill pointing at Britt after he walked past her on the UTA TRAX platform.

31.    In response to Defendant Orgill's gesture, Defendants Anaya and Martinez started to walk after Britt.

32.    Defendant Orgill also started to walk after Britt.

33.    Defendant Orgill attempted to get Britt to stop by repeatedly calling out to him "excuse me, sir!"

34.    Britt was under no legal obligation to speak to Defendant Orgill.

35.    Britt simply wanted to pick up the company vehicle and be on his way.

36.    Britt acknowledged Defendant Orgill and said, "I'm good" as he continued to walk toward the parking garage.

37.    Defendants Martinez, Anaya, and Orgill continued to walk after Britt.

38.    Defendant Anaya said to Britt, "Hey! I need to talk to you."

39.    Britt replied to Defendant Anaya, "I'm okay. I'm good. I'm alright."

40.    Seeing that Defendants Martinez, Anaya, and Orgill were still walking after him, Britt said, "Don't f--- with me."

41.    At this point, it was clear to any reasonable law enforcement officer that Britt was not willing to voluntarily stop and answer questions.

42.    Because there was no reason to suspect Britt of any crime, Defendants Martinez, Anaya, and Orgill were obliged to allow Britt to go on his way.

43.    Defendants Martinez, Anaya, and Orgill continued to follow Britt.

44.    Defendant Anaya asked, "What?" and Britt reiterated his instruction that they respect his right to be left alone, repeating, "Don't f--- with me."

45.    Defendant Anaya stated to Britt, "I need you to stop right now."

46.    Neither Defendants Anaya nor Martinez had any reasonable suspicion to believe Britt had committed, was in the act of committing, or was attempting to commit any crime.

47.    As such, these defendants had no lawful authority to detain Britt.

48.    The following exchange occurred as Britt continued to walk on the sidewalk adjacent to the Terminal as he was attempting to reach the parking garage:

> Britt:       Am I being detained?
> Anaya:       You're gonna be charged.
> Britt:       Am I being detained?
> Martinez:    Do you have a flight?

| | |
|---|---|
| Britt: | Am I being detained? |
| Martinez: | Yes. |
| Britt: | For what? |
| Martinez: | Do you have a flight? |
| Britt: | For what? |
| Martinez: | Do you have business at the airport? |
| Britt: | Why am I being detained? |
| Martinez: | Because the airport's closed. |
| Britt: | Why is it closed? |
| Martinez: | Because the flights are stopped. |

(Anaya Body Camera at 00:40; Martinez Body Camera at 00:30).

49.     Defendant Martinez's statement was not true. The Airport was not closed. Flights were not stopped. Except in the rare case of an extreme event, all flights do not stop, and it is a much rarer occurrence for the Airport to completely shut down its operations.

50.     Likewise, the Airport parking garage was open that night.

51.     Defendant Anaya said to Britt, "If you don't have a boarding pass or like anything you can't be here."

52.     That statement was false. Britt did not need a boarding pass to be where he was.

53.     Britt did not wish to engage with Defendants Martinez, Orgill, or Anaya but felt compelled to respond to assert his rights to refrain from speaking to them and to continue on his way.

54.     Britt responded, "You either need to arrest me or let me go."

55.     Britt continued walking on the sidewalk toward the parking garage.

56.     Britt walked past at least two Terminal entrances and did not indicate at any point, by word or action, that he intended to enter the Terminal.

57.     At this point, Defendants Martinez and Anaya physically grabbed Britt.

58.     Britt was wearing a black Ogio backpack.

59.     Defendant Anaya grabbed Britt's backpack, causing him to stop moving forward.

60.     Defendant Anaya grasped Britt's right shoulder, pulled, and brought his arm behind his back.

61.     Defendant Martinez grasped Britt's left arm, pulled, and brought his arm behind his back.

62.     Defendant Martinez pulled the straps of Britt's backpack from off of his shoulders and removed his backpack.

63.     Defendant Anaya locked a set of handcuffs around Britt's wrists with Britt's arms behind him.

64.     Britt offered no resistance as Defendants Anaya and Martinez laid hands on him and placed him in handcuffs.

65.     Britt had a pre-existing shoulder injury.

66.     Defendant Anaya's force in cuffing Britt was aggressive enough that Britt, worried about aggravating the injury, said, "I'm not resisting, so knock it off."

67.     Britt felt a painful reaggravation of his injury as Defendants Anaya and Martinez physically forced him into handcuffs.

68.     Britt had not threatened Defendants or anyone else while walking on the sidewalk.

69.     Defendants Anaya and Martinez had no reason to think, and did not think, that placing Britt in handcuffs was necessary for anyone's safety, including their own.

70.     Defendants Martinez and Anaya's actions in physically grabbing Britt from behind, placing him in handcuffs, seizing his possessions, and refusing to allow him access to his own property constituted a full custodial arrest for which probable cause was required.

71.    Defendants Martinez and Anaya had no probable cause to believe that Britt had committed, was is in the act of committing, or was attempting to commit a crime.

72.    After Defendants Anaya and Martinez arrested Britt, Defendant Orgill told Britt that the officers had stopped and handcuffed him because he had refused to stop and answer her questions.

73.    Defendants Martinez and Anaya did not contradict Defendant Orgill's statement.

74.    While being physically held by Defendant Martinez in handcuffs, Britt then had the following interaction with Defendants Anaya and Orgill:

| | |
|---|---|
| Britt: | Let's have a supervisor down here. |
| Orgill: | That would be me. I am the airport supervisor on tonight. |
| Anaya: | You're talking to her. |
| Britt: | No, let's get a police supervisor here. |
| Anaya: | She's the one you need to talk to. |
| Britt: | No. Let's get your supervisor. |
| Orgill: | The only reason they are here with me is because I am trying to get information and you're unwilling to provide it. Would you like to answer my question again? Do you have a flight tonight? |
| Britt: | Narissa Orgill *[reading name]*. |
| Orgill: | Would you like to answer my question? Do you have a flight tonight? |

(Anaya Body Camera at 2:20).

75.    Defendants Martinez and Anaya manifested agreement with Defendant Orgill's stated reason for the detention as she repeatedly instructed Britt to engage only with her in response to his questions to them.

76.    Defendants Martinez, Anaya, and Orgill acted pursuant to, or consistent with, Defendant Salt Lake City Corporation's unconstitutional Policy.

77.    Britt asked to remove his cell phone from his pocket, stating that he had a right to his phone.

78.    Defendant Martinez told Britt that he in fact did not have a right to his phone and refused to allow Britt access.

79.    The discussion continued, with Britt still handcuffed and being held by Defendant Martinez, as follows:

| | |
|---|---|
| Martinez: | What's your name? |
| Britt: | Why do I need to answer that question? |
| Martinez: | Because you are being detained. I need to find out who you are. |
| Britt: | Ok. Alright. And what's your lawful permissible purpose to stop me and handcuff me? |
| Orgill: | Because I'm trying to answer—get an answer from you, sir. |
| Britt | I'm asking you. You're the one that put me in handcuffs. |
| Martinez: | Right. But she—Right, but she's trying to explain to you. |
| Britt: | I'm talking to you. |
| Anaya: | She's trying to talk to you. |
| Orgill: | Sir. We do not allow anyone here on the last train to stay overnight unless you have proof of a boarding pass. |
| Britt: | I'm not talking to you. |
| Orgill: | Ok, but I'm talking to you. And that is the reason these officers are here with me because you're not participating in the questions that I'm asking. |
| Britt: | You've got me in handcuffs. |
| Martinez: | Do you want to listen to her? |
| Orgill: | If you don't have a right to be here at the airport, we ask you to leave. So, you're not giving me that opportunity to get that information. So, if you're not— |
| Britt: | Yeah, I'm not doing this discussion with you. You're going to have to book me and face the consequences of what's going to follow. OK? So let's get it on. Why don't you book me right now. |
| Orgill | Can we trespass him? |
| Anaya | Yeah, go ahead and trespass him. |

(Martinez Body Camera at 3:20).

80.    Britt repeated that Defendants Martinez and Anaya had not given him a reason why they had detained him and were continuing to physically hold him while he was restrained in handcuffs, telling them that they had no lawful reason to do so.

81.     The purpose of Defendant Salt Lake City Corporation's Policy appears to be to unlawfully circumvent the constitutional requirement that officers have a reasonable suspicion of a crime before they detain people against their will.

82.     Arriving on the last inbound UTA TRAX train did not give rise to a reasonable suspicion that Britt had committed, was in the act of committing, or was attempting to commit a crime.

83.     Defendant Salt Lake City Corporation's Policy, however, was to allow its agents to detain Britt for questioning on that basis alone.

84.     Defendant Anaya reaffirmed that the reason he placed Britt in handcuffs was because Britt had declined to speak to Defendant Orgill.

85.     The discussion continued as follows:

| | |
|---|---|
| Britt: | You're detaining me and you won't tell me why. |
| Anaya: | Just did. |
| Britt: | I'm asking you. |
| Orgill: | Can I— |
| Anaya: | Just explained—she explained to you. |
| Orgill: | Can I get your name? |
| Britt: | [*To Martinez*] You're the one that put me in handcuffs. |
| | [*To Orgill*] You didn't put me in handcuffs. |
| Martinez: | You're being trespassed. |
| Britt: | You put me in handcuffs. |
| Martinez: | You're trespassing. |
| Orgill: | Here, smile for me. Now what is your first name? |
| Britt: | Like—I don't have to answer to you. |
| Orgill: | You actually do. Because I— |
| Britt: | I don't even know who you are. |
| Orgill: | I am trespassing you. You don't have to know who I am. |
| Britt: | I'll answer to you *[speaking to other Defendants]*. |
| Martinez: | What's your name? |
| Britt: | Why do you want to know? |
| Martinez: | Because you're being trespassed. |
| Britt: | For? |
| Martinez: | Trespassing on the property. |

| | |
|---|---|
| Britt: | How am I trespassing? |
| Orgill: | Because you're not providing me a boarding pass. |
| Britt: | I don't need a boarding pass to be here. |
| Orgill: | Yes you do. |
| Britt: | No I don't. |
| Orgill: | You do. |
| Britt: | No I don't. |
| Orgill: | It is after hours and if you do not have a boarding pass, we send you on your way back downtown until you can provide you have one. |
| Britt: | I'm not going downtown. |
| Orgill: | Well, you may be going elsewhere. |
| Britt: | We'll see. |
| Orgill: | If you're not going to provide that information, the officers can take you to jail. |
| Britt: | Well, that's what I'm challenging them to do. |
| Britt: | Take me. Let's go. |
| Anaya: | Let's take him for trespassing, yeah? |
| Martinez: | Search him first. |
| Anaya: | Go ahead. |

(Martinez Body Camera at 5:00).

86.    Defendant Orgill's statement that Britt was required to have a boarding pass to disembark the UTA TRAX train at the Airport Station was false. No boarding pass is required to disembark the train at the Airport Station and walk along the sidewalk that runs adjacent to the Terminal leading to the parking garage.

87.    No boarding pass is required to access the Airport parking garage.

88.    The only circumstance in which Britt would have needed a boarding pass that night would have been to enter the Sterile Area of the Terminal and board an airplane, which he was not intending to do.

89.    Britt and Defendants were standing on the sidewalk that runs adjacent to the Terminal and leads pedestrians to the parking garage as they spoke.

90.    Defendant Martinez proceeded to search Britt's person.

91.    During that search, Defendant Martinez ran his left thumb under Britt's waistband, pinched the top of Britt's pants and underwear together, and shook aggressively.

92.    In response, Britt told him, "Take it easy buddy."

93.    Britt felt violated by this invasive search.

94.    Defendants Martinez and Anaya took Britt's backpack, cell phone, wallet, and set of company automobile keys. They retrieved the latter three items by reaching into Britt's pockets.

95.    Defendant Anaya also looked into, and placed his hands inside, Britt's backpack.

96.    Defendants Martinez and Anaya escorted Britt to a police vehicle.

97.    Britt again asked to speak with a police supervisor.

98.    Defendants Martinez and Anaya placed Britt in the passenger-side back seat of the police vehicle and belted him in.

99.    Britt still had his hands cuffed behind his back.

100.    There were no interior door handles or other means for Britt to exit the police vehicle.

101.    Defendants Martinez and Anaya told Britt they arrested him for trespassing and failing to comply with a lawful order by a police officer.

102.    At no point did any Defendant afford Britt an opportunity to leave voluntarily.

103.    At no point did Britt fail to comply with a lawful order by a police officer.

104.    Defendant Bywater, a uniformed supervisor of Defendants Martinez and Anaya, arrived at the scene.

105.    Upon information and belief, Salt Lake City Corporation delegated supervisorial duties to Defendant Bywater such that he was a final decision maker for Salt Lake City Corporation

in the area of whether to continue to detain people who have been arrested by lower-ranking officers.[1]

106.    Defendant Bywater, as the supervisor of Defendants Martinez and Anaya and as a policymaker for Defendant Salt Lake City Corporation, accepted or condoned the Policy and the officers' actions under the Policy.

107.    After Defendant Bywater arrived, Defendants Martinez and Anaya summarized the events of the detention to Bywater as follows:

| | |
|---|---|
| Bywater: | What's up? |
| Martinez: | So, last train, people that were getting on are getting on *[sic]*, this gentleman gets off and hustles past us. Uh, airport supervisor was trying to tell him "Hey, stop, what's your name, what are you doing." He refuses to stop. Officer Anaya tried to get him to stop. He just goes. He's refusing to talk to us. "I don't need to talk to you." So we get to the doors and try to stop him. He's saying, "No, I don't need to talk to you. I'm not stopping for anything, not answering any questions." |
| Bywater: | Ok. |
| Martinez: | Get him to stop. She's trying to explain to him, you know, "Why are you here? You got a boarding pass?" He's not answering any questions. |
| Anaya: | He doesn't want to talk to her. He doesn't even want to talk to us. |
| Bywater: | Ok. |
| Martinez: | "I don't need to answer any questions. I don't need to tell you anything." So she trespasses him. |
| Bywater: | Ok. |
| Martinez: | He's, uh, kind of hostile but he's wanting to talk to a supervisor. |
| Bywater: | Ok. |
| Bywater: | We'll go talk to him. But she--the supervisor has trespassed him, correct? |
| Martinez: | Correct. |
| Anaya: | Yeah. |

---

[1] Defendant Bywater did give a lieutenant an update about Britt's arrest and a general description of the circumstances while Britt was still arrested. Based on the audio of that call, however, it sounds as if Defendant Bywater was not seeking permission to continue Britt's arrest from his lieutenant. To the extent that Defendant Bywater's call to a higher-ranking officer on shift does suggest Bywater's decision was subject to review, the lieutenant's approval is further evidence of the existence of the Policy.

(Martinez Body Camera at 19:00.)

108.    Defendant Martinez's statement that they had reached "the doors" was false. Britt never moved to enter the Terminal and, in fact, walked past a set of doors designated for Terminal exit and entry.

109.    Defendant Martinez's statement contained other material misstates and omissions, including the misleading impression that Defendant Orgill had "trespassed" Britt prior to Britt's arrest and that Britt did not want to talk with the officers when Britt had stated that he would only talk to the officers.

110.    Based upon Defendant Martinez's description, Defendant Bywater knew there was no lawful reason to have detained and arrested Britt.

111.    Defendant Bywater inquired of Defendants Martinez and Anaya whether Britt had been arrested.

112.    Defendant Martinez confirmed that Britt had been arrested.

113.    Despite knowing from Defendant Martinez's account that there was no probable cause to make a full custodial arrest of Britt, Defendant Bywater ratified the arrest.

114.    Defendant Bywater opened the door of the police vehicle to speak to Britt.

115.    Britt requested to speak to Defendant Bywater in private, outside the presence of Defendants Martinez and Anaya.

116.    Defendant Bywater declined Britt's request to speak with him alone. This resulted in Defendant Anaya interrupting and interjecting.

117.    Britt's discussion with Defendants Bywater and Anaya went as follows:

Britt:        Have you made a decision yet on what you're going to do with me?
Bywater:    Well. They've arrested you. You're going to jail for trespass.

| | |
|---|---|
| Britt: | Ok. And how did I trespass? |
| Bywater: | Well, the uh, airfield folks told you—the airport folks told you, you can't be here. |
| Britt: | Well I was in handcuffs when they told me that. |
| Bywater: | And you refused to leave. |
| Britt: | I was never asked to leave. |
| Anaya: | Yes you were. |
| Britt: | Ok? |
| Anaya: | You were asked that if you didn't have business here at the airport, you don't have a boarding pass you couldn't be here. |
| Britt: | Well guess what? I do have business here. |
| Anaya: | You couldn't be here. |
| Britt: | I do have business here. |
| Anaya: | Well, you never said anything, you had business. |
| Britt: | I don't have to say that. |

(Bywater Body Camera at 3:00).

118.    Defendant Anaya's statement was not true. None of the Defendants asked Britt to leave the greater airport area before he was arrested.

119.    Britt told Defendant Bywater that he had a vehicle that he was in process of retrieving from the parking garage.

120.    Defendant Bywater's refusal to allow Britt to leave was a ratification of Britt's initial detention and arrest and extended the period of time that he was in custody.

121.    Defendant Bywater stated that if Britt had a vehicle in the Airport parking, wherein Britt's keys matched a car, then Defendants Martinez and Anaya could give Britt a citation and release him.

122.    Defendants Bywater, Martinez, and Anaya had no legal grounds to issue a citation to Britt.

123.    Defendants Bywater, Martinez, and Anaya had no legal reason to keep Britt under arrest in handcuffs to determine if Britt did have a vehicle parked in the garage.

124.    Defendant Bywater instructed Defendants Martinez and Anaya that, if Britt did not have keys to a vehicle parked in the garage, they should take him to jail.

125.    Defendants Bywater, Martinez, and Anaya had no legal grounds to take Britt to jail even if Britt did not have a vehicle in the parking garage.

126.    Before departing, Defendant Bywater ratified the unlawful actions of Defendants Martinez and Anaya, telling them "Good job."

127.    Defendants Martinez and Anaya drove Britt to the parking garage where the company vehicle was located.

128.    Defendant Martinez removed the handcuffs from Britt's wrists.

129.    Defendant Martinez then issued a citation to Britt for disorderly conduct.

130.    Britt had not taken any actions that constituted the crime of disorderly conduct.

131.    Because no reasonable law enforcement officer would believe that Britt had committed the offense of disorderly conduct, it can reasonably be inferred that the issuance of a citation was retaliatory for Britt's exercise of his constitutional rights.

132.    Defendants Martinez and Anaya returned Britt's backpack, cell phone, keys, and wallet.

133.    Defendant Martinez then told Britt, "So you have been trespassed from the Airport. Unless you have prop… business- got a flight going out, or you're picking up a car, explain that, "I have a car here, here's my keys.'"

134.    Defendants Martinez and Anaya admonished Britt for declining to speak with them on their unlawful terms.

135.    Defendant Martinez said, "When you rush past there's an issue. We don't know what you're doing. You might have a gun in there and you're just ready to go shoot everybody up."

136.    Defendant Martinez had no reason to think, and did not think, that Britt had a gun. Defendant Martinez had already confirmed to Britt that the sole reason he was detained and arrested was because he declined to speak with Defendant Orgill.

137.    Defendant Anaya then said, "You could have a bomb with you and you don't want to talk to us, and you want to go straight into the airport."

138.    Defendant Anaya had no reason to think, and did not think, that Britt had a bomb. Defendant Anaya had already confirmed to Britt that the sole reason he was detained and arrested was because he declined to speak with Defendant Orgill.

139.    Defendant Martinez admitted to Britt that they were following Defendant Salt Lake City Corporation's Policy that night.

140.    Defendant Martinez stated, "That last TRAX train is the one that we send everybody that doesn't belong here out. So that's what we were trying to do."

141.    Defendant Martinez then told Britt, "You're free to go."

142.    The total time that Britt was in custody with his hands restrained behind his back was approximately 53 minutes.

143.    On April 27, 2023, Salt Lake City Corporation filed a criminal infraction against Britt in Salt Lake City Justice Court, Case No. 231402326.

144.    The case was not brought by an information filed by a prosecutor, but "e-filed" by Defendant Martinez.

145.    On May 24, 2023, the case was dismissed.

146.    The docket for the case notes that "Per Judge Order: Dismiss and Close Case." There is no written order on the docket that explains why the judge dismissed the case.

147.    Upon information and belief, Britt remains "trespassed" from the airport.

148.    As a result of the actions of Defendants Martinez, Anaya, Orgill, Bywater, and Salt Lake City Corporation and their callous indifference to his rights, Britt has suffered harm.

149.    Defendants Martinez, Anaya, Bywater, and Orgill acted willfully and maliciously with complete and willful disregard for Britt's constitutional rights.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Deprivation of Constitutional Rights – Defendants Martinez and Anaya*

150.    Plaintiff incorporates by reference all other paragraphs of this Complaint, as if fully set forth herein.

151.    At all times relevant hereto and in performance of the acts set forth herein, Defendants Martinez and Anaya acted under color of state law.

152.    At all times relevant hereto and in performance of the acts set forth herein, Defendants Martinez and Anaya actively and personally caused the violations of Britt's constitutional rights as described above.

153.    As described above, Defendants Martinez and Anaya's conduct as alleged herein subjected Britt to the deprivation of his rights protected under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

154.    Defendants Martinez and Anaya's actions as alleged herein were a proximate cause of Britt's damages.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 – Deprivation of Constitutional Rights – Defendant Bywater*

155.    Plaintiff incorporates by reference all other paragraphs of this Complaint, as if fully set forth herein.

156.    At all times relevant hereto and in performance of the acts set forth herein, Defendant Bywater acted under color of state law.

157.    At all times relevant hereto and in performance of the acts set forth herein, Defendant Bywater condoned, accepted, and perpetuated the violations of Britt's constitutional rights.

158.    Defendant Bywater's conduct as alleged herein subjected Britt to the deprivation of his rights protected under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

159.    Defendant Bywater's actions as alleged herein manifested malicious, reckless and callous indifference to Britt's clearly established constitutional rights of which reasonable police officers are aware.

160.    Defendant Bywater's actions as alleged herein were a proximate cause of Britt's damages.

## THIRD CAUSE OF ACTION
*42 U.S.C. § 1983 – Deprivation of Constitutional Rights – Defendant Orgill*

161.    Plaintiff incorporates by reference all other paragraphs of this Complaint, as if fully set forth herein.

162.    At all times relevant hereto and in performance of the acts set forth herein, Defendant Orgill acted under color of state law.

163.    At all times relevant hereto and in performance of the acts set forth herein, Defendant Orgill facilitated, participated in, accepted, or perpetuated the violations of Britt's constitutional rights.

164.    Defendant Orgill's conduct as alleged herein subjected Britt to the deprivation of his rights protected under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

165.    Defendant Orgill's actions as alleged herein manifested malicious, reckless and callous indifference to Britt's clearly established constitutional rights of which reasonable municipal employees with a supervisory role are aware.

166.    Defendant Orgill's actions as alleged herein were a proximate cause of Britt's damages.

**FOURTH CAUSE OF ACTION**
*42 U.S.C. § 1983 – Deprivation of Constitutional Rights –*
*Defendant Salt Lake City Corporation*

167.    Plaintiff incorporates by reference all other paragraphs of this Complaint, as if fully set forth herein.

168.    The conduct of Defendants Martinez, Anaya, Bywater, and Orgill described herein reflects an established policy, practice, custom, and/or decision, officially adopted or informally accepted or condoned by Defendant Salt Lake City Corporation and its officials and employees of detaining individuals without reasonable suspicion based upon arriving at the Airport Station on the last Utah Transit Authority TRAX train of the day.

169.    Defendant Salt Lake City Corporation is required to take action to properly instruct and supervise their employees or agents and prevent their unlawful and unconstitutional actions.

170.    Defendant Salt Lake City Corporation was deliberately indifferent toward the proper instruction, training, and supervision of their employees and agents and failed to properly instruct, train, and supervise their employees and agents, namely Defendants Martinez, Anaya, Orgill, and Bywater.

171.    Defendants Martinez, Anaya, Orgill, and Bywater engaged in the herein-described conduct pursuant to and as a result of Defendant Salt Lake City Corporation's unconstitutional Policy.

172.    Moreover, Defendant Bywater, as a designated policymaker for Defendant Salt Lake City Corporation ratified and approved Defendant Martinez and Anaya's detention and arrest of Britt and approved and contributed to the prolonged time that he spent in their unlawful custody.

173.    The actions of Defendant Salt Lake City Corporation as alleged herein were a proximate cause of Britt's damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.    Economic and noneconomic damages as provided under applicable law and deemed appropriate by a jury;

B.    Attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and as provided under applicable law;

C.    An injunction declaring that Plaintiff is no longer "trespassed" from the Airport;

D.    Costs as provided under applicable law;

E.    Pre-judgment and post-judgment interest as provided under applicable law.

F.    Other declaratory, injunctive, or equitable relief as deemed appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all causes of action for which a jury is permitted.

DATED this 9th day of April, 2025.

CHRISTENSEN & JENSEN, P.C.

*/s/ Karra J. Porter*
Karra J. Porter
John M. Mejía
Anna P. Christiansen
*Attorneys for Plaintiffs*

Plaintiff's address:
c/o CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT  84111